UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHERYL DIANE DIXON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:14-cv-00753-JEO |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Cheryl Diane Dixon brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") finding that she is not disabled under the Social Security Act. (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013. Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

**I. PROCEDURAL HISTORY**

Dixon filed for disability insurance benefits and Supplemental Security Income ("SSI") benefits on July 29, 2010. (R. 70-71, 134-45).[2] She alleged an onset date of August 3, 2009. (R. 70-71, 134, 141). Her applications were denied by the State Agency, and she requested a hearing

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2]References herein to "R.___" are to the page number of the administrative record which is encompassed withing Docs. 5-1 through 5-15.

1

before an Administrative Law Judge ("ALJ").  (R. 70-73, 76-77).  Dixon, her counsel, and a vocational expert ("VE") attended the hearing on July 20, 2012.  (R. 20, 35-61).  At the hearing, Dixon amended her alleged onset date to September 16, 2010.  (R. 20, 54).  The ALJ issued a decision on August 2, 2012, finding that Dixon was not entitled to benefits.  (R. 20-29).

Dixon requested the Appeals Council to review the ALJ's decision and submitted additional evidence regarding her alleged disability. (R. 15, 225-27, 752).  The Appeals Council denied Dixon's request for review on February 10, 2014. (R. 1-5).  On that date, the ALJ's decision became the final decision of the Commissioner.  Dixon then filed this action for judicial review under 42 U.S.C. § 405(g).  (Doc. 1).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*

The court must uphold factual findings that are supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails

to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define being "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i-v) and 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

(1) Is the claimant presently unemployed;

(2) Is the claimant's impairment severe;

(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1 [the "Listings"];

(4) Is the claimant unable to perform his or her former occupation;

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

(5)  Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986).  An affirmative answer to any of the above questions leads either to the next question or, at steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." *Id.; see* 20 C.F.R. §§ 404.1520 and 416.920.

## IV.  FINDINGS OF THE ALJ

Dixon was 52 years old at the time of her hearing before the ALJ.  (R. 40).  She has past relevant work experience as a deli worker, cashier/checker, van driver, house manager, case aide, and hospital cleaner.  (R. 28, 55-56).  She alleges that she has been unable to work since September 16, 2010, due to breast cancer, arthritis in her knees, high blood pressure, depression, and pain and numbness associated with her chemotherapy.  (R. 41, 54).

The ALJ determined that Dixon had severe impairments of breast cancer, degenerative joint disease, and obesity, and non-severe impairments of gastroesophageal reflux disease, hypertension, allergic rhinitis, a small hiatal hernia, and depression. (R. 22-23).  He found, however, that none of Dixon's impairments, individually or in combination, met or medically equaled a listed impairment. (R. 23).  He further found that Dixon had the residual functional capacity ("RFC") to perform light work with limitations.  (R. 25).  Premised on the testimony of the VE, the ALJ determined that Dixon could perform her past work as a cashier/checker, case aide, and van driver, and could also perform work as a cashier, information clerk, and accessories assembler.  (R. 27-29, 55-57).

## V.  DISCUSSION

Dixon argues that the Commissioner's decision is not supported by substantial evidence and should be reversed. (Doc. 8 at 11).  In the alternative, she argues that the case should be remanded

for a "full and proper consideration" of the medical evidence of record, particularly an opinion from Dr. Danika Hickman, one of her treating physicians, that was submitted after the ALJ issued his decision. (*Id.*; R. 752). The Commissioner argues that the decision is supported by substantial evidence and should be affirmed. (Doc. 11 at 9).

### A. The Record

Dixon alleged in her initial filings that she became disabled and unable to work on August 3, 2009. (R. 70-71, 134, 141). She later requested that her onset date be amended to May 1, 2010, because her breast cancer was first detected that month. (R. 85). She amended her onset date a second time at her administrative hearing, after admitting to the ALJ that she lost her last job in August 2009 because of a "misunderstanding" with management and that she then applied for and received unemployment benefits for a year. (R. 52-53). She conceded that she felt capable of returning to work the entire time she was receiving benefits. (R. 53). She orally amended her onset date to September 16, 2010, the date of her breast cancer surgery. (R. 54).

Dixon testified at the hearing that her ability to work has been impacted by her breast cancer and the side effects of her chemotherapy, and by arthritis, high blood pressure, and depression. (R. 41). She said that she has numbness in her hands and feet, swelling in her right arm, and achiness in her joints. (R. 41-42). She estimated that she could walk about 15 steps before needing to rest, stand for about 30 minutes before needing to sit down, and sit for about 30 minutes before needing to change positions. (R. 43-44). She said that as a side effect of her chemotherapy, she needs to lie down to rest about three or four times a day for an hour at a time. (R. 44). She said that she relies on her daughter to do the shopping and to help her with her personal needs. (R. 49-50).

The medical evidence reflects that Dixon was diagnosed with breast cancer in July 2010.

(R. 230-37). She had a mastectomy in November 2010 and then underwent chemotherapy treatment from January through June 2011. (R. 373-77, 489-95, 664-69, 676). In September 2011, Dr. Khaleel Ashraf, Dixon's treating oncologist, prescribed aromatase inhibitor therapy for at least five years. (R. 670). By December 2011 Dixon had "no symptoms or signs of recurrence" of breast cancer and her "chemo toxicities" were "nearly completely resolved." (R. 676, 726). There were still no symptoms or signs of recurrence as of March 2012. (R. 725).

The medical evidence further reflects that Dixon was examined by Dr. Philip Badewa in October 2010. (R. 328-35). She was found to have decreased range of motion in her knees but normal power in all of her extremities. (R. 335). X-rays of her left knee revealed degenerative changes suggestive of osteoarthritis. (*Id.*)

Later in October 2010, Dr. Cynthia Neville, a consultative psychologist, performed a psychological examination of Dixon. (R. 341-44). Dr. Neville diagnosed Dixon as suffering from dysthymic disorder with mild symptoms of depression. (R. 344). Dr. Neville noted that Dixon "appeared to possess the cognitive abilities to understand and remember work instructions although her symptoms of depression might limit her ability to follow through to a mild degree at times." (*Id.*) She also noted that Dixon's "ability to interact appropriately with coworkers and supervisors or to handle typical work pressures might be negatively impacted by her symptoms of depression to a mild degree currently." (*Id.*)

In November 2010, T.E. Pierce, a non-medical source, performed a physical RFC assessment of Dixon. (R. 345-52). Pierce determined that Dixon should never climb ladders, ropes, or scaffolds but otherwise had only occasional postural limitations. (R. 347). Pierce further determined that Dixon had no manipulative limitations, no visual limitations, no communicative limitations, and no

environmental limitations other than avoiding unprotected heights and dangerous machinery. (R. 348-49). Pierce also noted that Dixon had osteoarthritis in both knees but that the functional limitations from this condition were "less than alleged." (R. 350).

Dr. Robert Estock, a state agency psychiatrist, reviewed Dixon's medical records in November 2010. (R. 353-66). Dr. Estock determined that Dixon had the medically determinable impairment of dysthymic disorder but that the impairment was not severe. (R. 353, 356).

Finally, the medical evidence reflects that Dixon was treated by her primary care physician, Dr. Danika Hickman, in December 2011. (R. 740-41). Dixon complained of pain in her knees, shoulders, and hands and was prescribed pain medication. (*Id.*). In August 2012, after the ALJ had issued his decision, Dr. Hickman submitted a letter in which she expressed the opinion that Dixon is "unable to work" and "permanently and totally disabled from any profession." (R. 752).

**B.     Analysis**

Although Dixon repeatedly asserts in her memorandum of law that the Commissioner's decision is not based upon substantial evidence, the only error she cites is the Commissioner's alleged failure to properly evaluate the post-hearing opinion of her treating physician, Dr. Hickman. (Doc. 8 at 6-10). She specifically challenges the Appeals Council's determination that Dr. Hickman's opinion did not provide a basis for changing the ALJ's decision, a determination that she claims "does not withstand scrutiny." (*Id.* at 10). The court disagrees.

As a preliminary matter, the court finds that the ALJ's decision is supported by substantial evidence. The ALJ's decision contains a detailed discussion of the testimony and medical evidence in the record before him and his findings regarding Dixon's impairments, limitations, and RFC are consistent with and amply supported by such evidence. (*See* R. 22-29). In this regard, the court notes

that Dixon has not identified any alleged errors in the ALJ's evaluation of the evidence or application of the law.

The only issue left for the court's determination, therefore, is whether the ALJ's decision is supported by substantial evidence once Dr. Hickman's post-hearing opinion is considered. As Dixon correctly observes in her memorandum of law, a federal district court "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when [the court] reviews the Commissioner's final decision denying Social Security benefits." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258. (11th Cir. 2007). "[W]hen a claimant properly submits new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id.* at 1262. Here, the entirety of Dr. Hickman's opinion is as follows:

> Cheryl Dixon is under my care and is unable to work. She has breast cancer and chronic pain. She has depression and is on sedating medications that make it difficult to stay awake to work. She is permanently and totally disabled from any profession.

(R. 752). The court concludes that this new evidence does not render the denial of benefits to Dixon erroneous, for two reasons.

First, Dr. Hickman's opinion that Dixon is "unable to work" and "permanently and totally disabled" is a determination reserved for the Commissioner and is, by rule, given no special weight. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d) (opinions that a claimant is "disabled" or "unable to work" are not medical opinions and are not given "any special significance"; they are "opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case"); *see Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("While [the examining physician] generally opined that if untreated, [the claimant's] condition

would likely prevent her from maintaining gainful employment, this was not a medical assessment, but simply an opinion on an issue reserved to the Commissioner's discretion.").

Second, Dr. Hickman's opinion is not supported by the objective medical evidence in the record. The ALJ summarized the medical evidence in his decision:

> This is a record that is long on medically diagnosed impairments and short on evidence of significant associated symptoms. A March, 2010 physical examination was "[n]ormal." At an October 8, 2010 assessment at which she complained of knee pain, she appeared in no acute distress, demonstrated normal strength, normal range of motion in her back, some tenderness and decreased range of motion in here knee, but normal"power" in her extremities. At an October 21, 2010 examination, she was "pleasant" and "conversational," in no acute distress, with no overt motor deficits, while she was "pleasant' and "cooperative" at her October 29, 2010 consultative examination, displayed a normal gait, and "laughed on several occasions." At a February, 2011 medical visit, she was alert and oriented, with normal muscle strength, while at a March, 2011 examination she was described as "tolerating chemotherapy fairly well." At a September, 2011 visit following chemotherapy, she was described as "feeling fairly well."
>
> There is certainly evidence of side-effects, including nausea, anemia, and occasional headaches associated with her chemotherapy, but she is routinely described as "doing fairly well" without evidence of significant functional limitations. Similarly, while the claimant reported "some peripheral neuropathy in her fingers and feet" related to her treatment, none of her physicians has indicated that these side-effects are enduring and especially limiting. In December, 2011, after the claimant completed her chemotherapy, she was described as doing "well" with no symptoms or signs or recurrence, and "chemo toxicities" that were "nearly completely resolved." A March 5, 2012 follow-up examination was similarly benign, noting that the claimant was compliant with her medication, "occasional[ly]" took medication for "neuropathic type pain," and was alert and oriented with negative indications of neurological, musculoskeletal, or psychological problems.

(R. 25-26) (citations to exhibits omitted). The ALJ also observed that "there is a stark disconnect between the claimant's allegations and the objective medical evidence that undermines her overall credibility," noting that Dixon "routinely appears alert, oriented, and in no acute distress at her medical visits." (R. 26). The ALJ further noted that Dixon's "physical examinations typically indicate grossly normal strength in her extremities, and the objective medical evidence does not

indicate the presence of significant manual dexterity problems or the medical need for an assistive devise to maintain gait or station." (*Id.*) (citation to exhibit omitted).

In sum, even considering Dr. Hickman's post-hearing opinion, the Commissioner's decision is supported by substantial evidence and is not contrary to the weight of the evidence. Substantial evidence supports the Commissioner's determination that Dixon was not under a disability as defined by the Social Security Act. Dixon has not demonstrated that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.

**DONE,** this the 28th day of April, 2015.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge